IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,       No:  1:11cr259

vs.

JAMES ANDREW KOHN,

                Defendant.
_____/

Before

                  THE HONORABLE JANET NEFF,
                    U.S. District Judge
                    Grand Rapids, Michigan
                    June 18, 2012
                    Sentencing Proceedings

APPEARANCES:

                MR. DONALD DAVIS, U.S. ATTORNEY
                By:  MS. JULIE ANN WOODS
                The Law Building
                330 Ionia Avenue, NW
                Grand Rapids, MI 49503
                616-456-2404

                    On behalf of the Plaintiff;

                FEDERAL PUBLIC DEFENDERS
                By:  MR. RICHARD D. STROBA
                50 Louis Street NW
                Suite 300
                Grand Rapids, MI 49503-2633
                616-742-7420

                    On behalf of the Defendant.

REPORTED BY:  MS. KATHY J. ANDERSON, RPR, FCRR

1                              June 18, 2012

2                   PROCEEDINGS, 11:07 a.m.

3         THE CLERK:  All rise, please.  This court is now in

4  session.  Please be seated.

5         THE COURT:  Good morning, everybody.

6         MR. STROBA:  Good morning, Your Honor.

7         MS. WOODS:  Good morning, Your Honor.

8         THE COURT:  This is the date and time set for

9  sentencing in case number 1:11cr259, the United States of

10  America versus James Andrew Kohn.  Counsel, may I please have

11  introductions and, I'm sorry, appearances and introductions.

12         MS. WOODS:  Julie Woods on behalf of the United

13  States Attorney's office.  Seated to my right is Special Agent

14  Timothy Kruithof.  I did spell his last name for your court

15  reporter earlier.

16         MR. STROBA:  Good morning, Your Honor, Richard

17  Stroba on behalf of the defendant, Mr. Kohn.  Mr. Kohn is also

18  present.

19         THE COURT:  Mr. Kohn entered a guilty plea to Count

20  1 of a two-count indictment on March 12, 2012, before

21  Magistrate Judge Ellen Carmody to the offense of sexual

22  exploitation of a child, which is contrary to 18 U.S.C.

23  2251(a), and 2251(e).  I should also mention that present in

24  the courtroom this morning is United States Probation Officer

25  Lori Hodel.

1           The potential penalties in this case are a

2    mandatory minimum 15 years imprisonment to a maximum of

3    30 years imprisonment, and/or a $250,000 fine.

4           The offense behavior can be fairly summarized as

5    follows:  The defendant produced digital images of himself

6    engaging in sexual intercourse with a minor female child who

7    was also his daughter.

8           And it is the, if I understand correctly, the

9    production of this child pornography that's the behavior at

10   issue here.

11          The report and recommendation of the magistrate

12   judge was adopted on March 30, 2012.  There is a plea

13   agreement which I accept at this time and I find that the

14   charge pled to adequately reflects the seriousness of

15   Mr. Kohn's actual offense behavior.

16          There is a presentence report.  Ms. Woods, does the

17   government have any errors, additions or objections to the

18   facts as recited in the report?

19          MS. WOODS:  No, Your Honor.  Thank you.

20          THE COURT:  Thank you.  Mr. Stroba on behalf of the

21   defendant.

22          MR. STROBA:  We have none, Your Honor.

23          THE COURT:  Thank you.  Mr. Kohn, have you read the

24   presentence report?

25          THE DEFENDANT:  Yes, Your Honor, I have.

1     THE COURT:  Have you thoroughly and carefully

2   discussed it with Mr. Stroba?

3     THE DEFENDANT:  Yes, I have.

4     THE COURT:  And is there anything about it that as

5   you sit here in the courtroom this morning you either don't

6   understand or you still have questions about?

7     THE DEFENDANT:  No, there is not.

8     THE COURT:  Have you been satisfied with the

9   representation that Mr. Stroba has provided you?

10     THE DEFENDANT:  Yes, Your Honor.

11     THE COURT:  Very well.  The presentence report

12   contains a calculation of the advisory guidelines calculations

13   as follows:  The offense level is calculated at 46, but 43 is

14   the maximum, I guess.  The Criminal History Category is

15   calculated at 1 based on zero criminal history points.  The

16   defendant is therefore in Zone D of the grid where the

17   advisory range is actually 360 months to life, although, as

18   indicated, the statutory maximum here is 360 months.

19   Supervised release range is five years to life.  The fine

20   range 25,000 to $250,000, restitution as determined by the

21   probation officer is $5,000 which is calculated based on

22   continuing counseling expenses for the young victim, and there

23   is a mandatory special assessment of $100.

24     There are no objections to scoring, and my scoring

25   is the same as, the same as Ms. Hodel's.  And I must say I did

1    spend quite a lot of time reviewing the scoring that is in

2    this case because the numbers are so significant.  But in any

3    event, my scoring indicates offense level 43, Criminal History

4    Category 1, Zone D of the grid, because of the statutory

5    maximum the advisory range for custody is 360 months.

6    Supervised release range is five years to life, fine range is

7    25,000 to $250,000, restitution at $5,000 and $100 special

8    assessment.

9              There were no requests for departures under the

10   guidelines, is that correct, Ms. Woods, on behalf of the

11   government?

12             MS. WOODS:  That is correct, Your Honor.  Thank

13   you.

14             THE COURT:  Mr. Stroba.

15             MR. STROBA:  It is correct, Your Honor.

16             THE COURT:  Are you then -- does everybody agree

17   with me then that the following is accurate and correctly

18   calculated:  A Total Offense Level 43, Criminal History

19   Category 1, guideline range for custody 360 months, supervised

20   release five years to life, and fine 25,000 to 250,000.

21   Ms. Woods.

22             MS. WOODS:  Yes, Your Honor, the government agrees.

23             THE COURT:  Thank you.

24             MR. STROBA:  I agree as well, Your Honor.

25             THE COURT:  Thank you.  Mr. Stroba, are you ready

1    for your allocution?

2         MR. STROBA:  I am, Your Honor.  Thank you, Your

3    Honor.  If it please the Court.

4         We do believe that the presentence investigation

5    report is complete and accurate, and we thank Ms. Hodel for

6    her work in regard to this matter.

7         We do incorporate by reference the sentencing

8    memorandum and the attachments that we had along with our

9    motion for downward variance in this matter.

10        In regard to the comments on sentencing, I think I

11   only have a few things to add to the material that we supplied

12   and the arguments we supplied to the Court in the sentencing

13   memorandum.

14        I take to heart and my first remark was going to be

15   similar to what the Court started with, which was it should be

16   remembered that although the Court is called upon to sentence

17   a defendant for acts that include behavior that is wrong by

18   any measure, the crime committed here is the photography of

19   that act, not the acts themselves, and not any form of use of

20   the image; in other words, there was no distribution, there

21   was no profit motive involved here.

22        The criminal sexual conduct that underlies this has

23   been addressed and quite severely by the state authorities in

24   the state court prosecution that rendered a sentence of

25   225 months to 600 months.

1    This Court should sentence the defendant for the

2    federal crime which is the creating of the digital images.

3    There apparently was no component of distribution, no

4    component of profiteering, or any other added conduct that

5    would make this more egregious than just what occurred as to

6    the production of the images.

7    And I think that that's significant.  And there are

8    some other things that are significant as well.

9    It would appear to me that the sentencing

10   guidelines in this case really draw little distinction between

11   offenders in the area of child exploitation as it is in this

12   case.  The defendant, as the Court has noted, basically maxes

13   out under the guidelines and maxes out under the statutory top

14   end as a guideline range, virtually the same category as a

15   commercial producer.  The offense level is so high that it's

16   off the charts.

17   The defendant, who is a middle-aged man with no

18   criminal history, whose offense seems limited to the two

19   occasions as described in the presentence report, who stopped

20   his conduct when he was confronted, and that was even a

21   significant period of time before there was actually any

22   intervention by authorities, by the state authorities, or that

23   this conduct was ever reported to state authorities.

24   This individual should not be treated in the same

25   class as somebody who might be considered a commercial

producer who does so with a much more serious and wrongful

ulterior motive.

I also note that the government's memorandum in

this matter describes some of the content from the victim

statement to state authorities and/or the state sentencing

court, but I think the citations were a bit selective, and I

think it's worthy of note, as indicated from what I saw of the

state court victim impact statement, that the victim in this

case, as you might expect because she is the daughter of the

defendant, did not oppose the fact that there was plea

bargaining in the state court case, did not think that the

defendant should be sent to prison.

THE COURT:  She is a kid.

MR. STROBA:  I understand that, Your Honor.  But if

we are going to consider the bad things that she said, I think

it's worthy of note, and Mr. Kohn has a right to have it all

clearly on the record as well.  And by that I mean in the

government's memorandum, they talked about things she said

about how she felt, and I think that that's true.  It's also

relevant to I think Mr. Kohn's statement that he may make to

the Court regarding the sorrow with which he feels for putting

his daughter in this situation at all.

And the only other thing that I was going to cite

from that victim impact statement was is that she thought he

certainly would need counseling, as she thought she would need

1    counseling, but she thought that he didn't need to go to

2    prison.  And I think she clearly indicated a difference

3    between understanding jail and prison because she was offered

4    two different options.

5         And I will state, and I understand she is a child,

6    and that's what brings us here, by and large, but nonetheless,

7    there is still that bond that was there.  That's now gone.

8    Mr. Kohn can never restore it.  His parental rights have been

9    appropriately terminated.  But, nonetheless, it's a relevant

10   consideration.  And if the Court is going to consider part of

11   the victim's situation, I think she should, the Court should

12   consider it all.

13        We do cite in our memorandum the very low

14   likelihood of recidivism by this offender, and offenders of

15   the categories which fit this defendant.

16        As the Court has to consider both deterrence and

17   protection of the public, I think the low rate of recidivism

18   is certainly something the Court can consider in determining

19   what is a sufficient but not greater than necessary sentence.

20        I note that since the defendant will not be

21   eligible for so-called good time in the state prison system

22   because the 225 months that he got, he will serve the

23   225 months before he is eligible to be considered for parole.

24        That doesn't mean he is going to parole in just

25   18 years and nine months.  That means he has to begin the

1    parole process shortly before that and then convince the

2    parole board that he should be allowed to be released even on

3    terms and conditions.  And I would note based upon my

4    experience in the state court anyway, is that the parole did

5    not always occur, particularly for sex offenders, the first

6    time around or even the second time around.

7          So when this gentleman ends up getting out of

8    prison on parole, he is going to be 66 at least, and probably

9    older.

10          We do ask the Court to recommend to the Bureau of

11    Prisons, and this is somewhat speculative as to whether or not

12    Mr. Kohn will ever get to the Bureau of Prisons if, as I

13    understand how the sentencing process is going to work because

14    he will be taken back to the state system, we would request

15    mental health counseling and assessment and counseling as

16    appropriate, educational and vocational opportunities

17    consistent with his abilities.

18          As I noted in the memorandum, he has always worked.

19    He has a good record that way.  That's not unusual, I guess,

20    for individuals in his situation because everything else would

21    indicate about his life that it has been relatively

22    straightforward and upright.

23          We do ask specifically that the Court render a

24    concurrent sentence, that being consistent with the guidelines

25    and appropriate here.  I do have, if the Court is interested

1    or needs some very specific language as I understand it that

2    the Bureau of Prisons needs if the Court is going to render a

3    concurrent sentence, but I would be happy to supply that to

4    your staff if that's necessary.

5           We have run into that issue before with the Bureau

6    of Prisons in terms of making sure that they are trying to

7    fulfill --

8           THE COURT:  Yeah, we usually get a letter from

9    somebody telling us we need more specific language.

10          MR. STROBA:  We have determined four separate

11   sentences that can be used that seem to take that situation

12   away.

13          THE COURT:  Good.  That's helpful.

14          MR. STROBA:  A sentence that is sufficient but not

15   greater than necessary would be a concurrent sentence.  And I

16   also think one that is significantly less than the guideline

17   calls for would serve the purposes of sentencing under

18   3553(a).  He is going to be punished.  He already has been

19   punished and he started serving that sentence, a very short

20   period of it, before he was brought back.  He is probably

21   going to serve that in the state court.  And the question

22   ultimately is what is sufficient.  We know that the criminal

23   sexual conduct has been dealt with harshly, as I said; to what

24   extent this Court needs to add punishment to that or to punish

25   what conduct he did here I think is less than the guidelines.

1          Does the Court have any questions?

2          THE COURT:  I don't.

3          MR. STROBA:  Thank you, Your Honor.

4          THE COURT:  Thank you, Mr. Stroba.  Mr. Kohn, I'm

5   sure you've talked with Mr. Stroba but at this point in time

6   you have an opportunity to speak in your own behalf and to

7   tell me anything that you think is important for me to know

8   other than what he's already said and written on your behalf.

9   You should know that I have read the transcript of your plea

10  proceeding, I have read Mr. Stroba's memo, the government's

11  memo, and various other matters in the file, including the

12  lengthy presentence report.

13          But if you would like to speak on your own behalf,

14  please come to the podium with Mr. Stroba.

15          THE DEFENDANT:  Your Honor, I would just like to

16  say that I am truly sorry for putting my daughter in the

17  position that she is in right now.  And if there was any

18  possible way I could go back and change what happened, I

19  certainly would do that.  I guess that's about all I can say.

20          THE COURT:  You know, Mr. Kohn, I have to say that

21  I struggle to understand these kinds of crimes which, and I

22  appreciate what Mr. Stroba had to say, that you're here really

23  specifically for the production of digital images, some of

24  which I have reviewed.

25          But it's very difficult for anybody who looks at

1    those images, including the law enforcement people, the

2    probation officer, myself, not to be effected by what's in

3    those images.  And I struggle, as I think many of us do, to

4    understand how you could get to that place.  I really do.  And

5    if there is anything you can do to help me understand that, it

6    would be good thing.

7         THE DEFENDANT:  Your Honor, I, I'm in the same

8    position.  I don't know.  I -- there is nothing, there is no

9    excuse, there is nothing that I can say that is going to make

10   it right or better.

11        THE COURT:  Well, it's not really so much that.  I

12   mean there is nothing you can say under any circumstances that

13   would make it right.  There is no explanation, excuse,

14   nothing.  But what I'm -- what I struggle with is how you get

15   to the point of doing those kinds of things.

16        THE DEFENDANT:  I honestly, I don't know.  I do not

17   know.  I wish I had an answer to give you.  I just don't.

18        THE COURT:  Okay.  Thank you for your comments.

19   You may return to your seat.

20        THE DEFENDANT:  Thank you.

21        THE COURT:  Ms. Woods.

22        MS. WOODS:  May it please the Court.

23        I think Your Honor has summarized pretty much the

24   way all of us have responded to this case.  It's appalling.

25   It's almost impossible to separate the incest, the rape from

1    the production of the images.  49 images of this man's
2    daughter being raped by him.
3            It's pretty appalling.  It goes past so many taboos
4    in our society that it reflects a serious shortcoming in this
5    defendant's ability to control himself and not only behave
6    within the confines of the law, but to behave within the
7    confines of a very basic moral premise of our society.
8            This case thank heavens does not involve
9    distribution.  We are just lucky that he didn't put that in a
10   share folder.  But he did create them to keep so that he could
11   go back to them and look at them the way many of us would look
12   at pictures of our children when they are little or our
13   grandchildren when they are little.
14           Only these are pictures of incestuous rape.
15           This defendant needs to be away from society for as
16   long as possible to protect other children, to protect the
17   public from this person who can not abide by the law, and
18   cannot abide by basic moral principles.
19           This case requires a severe sentence, a sentence
20   that will ensure that he is a very old man when he gets out of
21   prison.  Thank you.
22           THE COURT:  Thank you, Ms. Woods.  Well, the
23   guidelines which have been discussed here this morning are
24   advisory only, but the other side of that is that I do have an
25   obligation to consider them and to consult them before

1    reaching a sentence which is reflective of my underlying duty

2    to impose a sentence which is sufficient but not greater than

3    necessary to comply with the purposes of Section 3553(a).

4         And this is a case in which I think it's really

5    important to talk about all of the factors, as well as to

6    discuss the defendant's request for variances.

7         Now, the statute first talks about reviewing the

8    nature and circumstances of the offense and its seriousness.

9    And in my view it almost goes without saying that it would be

10   hard to conjure a more serious offense.  The underlying acts

11   themselves which were photographed exhibit such a tremendous

12   breach of trust between a parent and a child.  The images

13   reflect infliction of pain and shame and humiliation.  And to

14   be really honest with you, in reviewing this file, both the

15   plea transcript and the presentence report, I'm really not

16   convinced, Mr. Kohn, that you truly understand how serious

17   your actions were.

18        Your plea colloquy was very, very brief.  When -- I

19   think it was Judge Carmody, or Judge Scoville.

20        MR. STROBA:  Judge Carmody, Your Honor.

21        THE COURT:  Thank you.  When Judge Carmody said I

22   would like you to tell me in your own words what you did that

23   makes you guilty of the crime to which you just pled guilty,

24   you said simply I took photographs of a female under 18 years

25   old having sex.  Didn't even mention that it was your

1   daughter.  I mean I can see where maybe that would be really

2   painful to say that, but how could you leave that out in

3   saying what you did.  Because it really, at least in my view,

4   makes the offense that much more serious and requires your

5   understanding of that.  And I don't think you really do.

6       In any event, short of taking life, I think that

7   this crime on a scale of one to ten has got to be right at the

8   top end.

9       The statute then requires a review of the history

10  and characteristics of the defendant, and Mr. Kohn is a

11  48-year-old man who achieved his GED on his own.  He has had

12  some college.  He's been twice married.  His second wife, who

13  is the one who reported this crime, is now in the process of

14  divorcing him, although she herself certainly is not exactly a

15  paragon of virtue having known about this offense for

16  something like a year before she reported it, and as I

17  understand it, she has since gone to jail for a drug offense

18  of some description.  Mr. Kohn's daughter is fortunate to have

19  grandparents who apparently care a great deal about her and

20  have been taking care of her.  And I think at least based on

21  what I read, she is doing pretty well, and we hope that she

22  will continue to have the benefit of her grandparents and to

23  continue in her counseling and progression to try to deal with

24  what has happened to her.

25      As noted by Mr. Stroba, Mr. Kohn's parental rights

1    have been terminated, and as I understand it, also as to the

2    mother.

3                 Mr. Kohn does have a fairly consistent work history

4    which is certainly important.

5                 The purposes of sentencing are laid out in the

6    statute.  The first two talk about the retribution end of

7    things which are to provide punishment and to promote respect

8    for the law.  And here I think the emphasis must be on

9    punishment because obviously of the very serious nature of the

10   offense.  Deterrence and protection of the public are the

11   second or the third and fourth purposes of sentencing, and I'm

12   not sure that Ms. Woods is correct that those two factors are

13   all that high on the list of goals to be really emphasized

14   here.  At least as far as we know, this behavior on Mr. Kohn's

15   part is somewhat aberrant, as awful as it is, and so I'm not

16   sure we need to be concerned about deterrence so much.

17                 But the statute also says we should look to

18   rehabilitation also, although, the Supreme Court and the Sixth

19   Circuit have given us mixed messages on that issue.  But I

20   don't think there is any question that incarceration should

21   address in this case rehabilitation.

22                 So the question is whether the guidelines are

23   properly reflective of the statutory factors.  Is this a

24   heartland case.  I don't see how photographing sex with your

25   daughter can ever be a heartland case.

1          And so pursuant to the Sentencing Reform Act of

2     1984, it's my sentence --  well, let me go back a minute.  I

3     want to talk a minute about Mr. Stroba's request for variance.

4          As I said, I do agree to some extent that

5     deterrence is not such a major factor here.  Mr. Stroba's

6     brief suggests that the state sentence will provide adequate

7     deterrence.  He points to the lack of criminal history, he

8     argues that there is a low risk of recidivism.  I'm really not

9     sure how we can even judge that.  Mr. Stroba's brief does make

10    some interesting statistical arguments, and he makes the

11    argument that the guidelines don't distinguish between those

12    who commit just a few of these types of offenses and those who

13    commit many, those who do this kind of activity for financial

14    gain, and he also then talks about the overlapping application

15    of offense characteristics with the state crimes and says that

16    in the end the guidelines overstate the seriousness of this

17    offense.  As to the latter, as I said, I just don't think

18    that's even possible.  And as I have said in previous cases, I

19    do think that in scoring these offenses we do, the guidelines

20    do create an awful lot of characteristics which are applicable

21    and which do result in very high offense levels as we see

22    here, but in this case I think it's really hard to disagree

23    with the application of those offense characteristics.  Four

24    offense levels for an offense involving a minor who is not yet

25    12 years old, two offense levels for commission of a sexual

1    act or sexual conduct in the images, four offense levels for

2    sadistic or masochistic conduct depicted or depictions of

3    violence in the images, and here without being too terribly

4    graphic about the images that I observed, it's hard to argue

5    that that specific offense characteristic should not apply

6    when -- well, if this is ever reviewed the reviewing court

7    can look at the images for themselves.

8              And then finally, the specific offense

9    characteristic that the defendant was a parent, which is two

10   offense levels.  I really wonder whether that shouldn't even

11   be more because of the terrible breach of trust that is

12   involved.

13             So in terms of whether the guidelines overstate and

14   the characteristics overlap with the state crimes, I think

15   there is an overlap, certainly, but I don't think, I just

16   don't think it's possible to overstate the seriousness of this

17   offense.

18             And, again, you know, Mr. Stroba's brief as always

19   is well done, and I found his discussion of some of the

20   statistical issues to be very, very helpful in putting some

21   things in perspective, particularly with regard to the issues

22   of recidivism and as relates to the offense itself, and the

23   age of the defendant, and so forth, the education.  And so, as

24   I say, I am somewhat convinced that recidivism is not the real

25   major focus of -- it shouldn't be in this particular case,

1    should not be the major focus of the sentencing calculus.

2         And even taking into account all of the arguments

3    made by counsel on behalf of Mr. Kohn, I still think that the

4    seriousness of the offense and the need to punish require a, a

5    sentence at the high end of the guidelines.

6         And so pursuant to the Sentencing Reform Act of

7    1984, it's my sentence that the defendant serve 360 months

8    incarceration, and that this term be concurrent with the time

9    served in Barry County case docket number 11-100211-FC-M; that

10   sentence is apparently 18 years nine months to 50 years.  And

11   based on my experience with state court parole decision

12   making, I think Mr. Stroba is probably right, that even after

13   Mr. Kohn serves the minimum of that indeterminant sentence the

14   chances are pretty good that he will not be out on parole

15   right away, although who knows what will happen in 18 years.

16        In any event, when he comes into federal custody,

17   and if he does serve the time indicated, then the sentence

18   will, my sentence includes a five-year term of supervised

19   release subject to the standard conditions of reporting and

20   remaining law abiding.  Mr. Stroba and Mr. Kohn have reviewed

21   the order regarding additional sentencing conditions, and both

22   have signed it indicating that they have read it and

23   understand those conditions.  And I'm signing the order right

24   now for entry.

25        The fine in this case is waived.  I do order in the

1    additional sentencing conditions to include a restitution

2    amount of $5,000 which is based on the estimated cost of

3    long-term counseling for Mr. Kohn's daughter.  Interest on the

4    restitution is waived.

5                 There is a mandatory special assessment of $100.

6    The following recommendations will be made to the Bureau of

7    Prisons:  First for mental health and sex offender evaluation

8    and treatment.  And second, for vocational and/or educational

9    programming.

10                Ms. Woods, does the government move to dismiss

11   Count 2 of the indictment?

12                MS. WOODS:  Yes, Your Honor, I so move.

13                THE COURT:  The motion is granted.  Are there any

14   legal objections to the sentence imposed other than are

15   already on the record, Ms. Woods?

16                MS. WOODS:  No, Your Honor.  Thank you.

17                THE COURT:  Thank you.  Mr. Stroba.

18                MR. STROBA:  Your Honor, there is one objection

19   that I would lodge.  It's regarding the Court's comments about

20   the plea taking proceeding, and the questions posed by the

21   judge and the answers provided by my client.  I think one

22   needs to remember that the purpose of the plea taking

23   proceeding is to establish the elements of the crime that has

24   been charged, and in this case the answers that were provided

25   by my client were directly related to the elements of the

1  crime and followed the statement of the crime as indicated by

2  government counsel.  Judge Carmody's procedures are usually to

3  have the government counsel indicate on the record the factual

4  basis and the background for the evidence that would be

5  produced or would otherwise be used to establish the elements.

6  I believe that occurred in this case and then my client was

7  asked to indicate what he did that was the crime in this case.

8  And so to the extent that any part of the sentence was based

9  upon the Court's analysis of that transcript, I would object

10  to that.  Thank you.

11        THE COURT:  Well, I appreciate your comments,

12  Mr. Stroba, and it gives me an opportunity to perhaps clarify.

13        In my full review of this case, and I think counsel

14  both know that I do spend a great deal of time reviewing

15  everything in the file before I come out here, and I always

16  read the plea transcript because it can be so revelatory, if

17  that's a word, but here I will say that it was a very small

18  part of my determination of the sentence in this case, which

19  is a very lengthy one, obviously.  And I weighed so much, I

20  looked at so much and read so much, and that transcript was a

21  very, very small part of what played into my decision.  But

22  thank you for your comments.

23        MR. STROBA:  Thank you, Your Honor.  No other

24  objections that the Court didn't otherwise address.

25        THE COURT:  Thank you very much, Mr. Stroba.

1          Mr. Kohn, I need to talk with you about your right

2     to appeal in this case.  You do have a right to appeal, and

3     you need to understand two things going forward:  First of

4     all, you'll have 14 days from the time the sentence, the

5     judgment of sentence is entered to decide whether you want to

6     appeal and talk to Mr. Stroba about it.  And I know he will

7     very confidently he will lay out your rights in full and tell

8     you what your options are.  But keep in mind that the window

9     to make that decision is 14 days long.  I expect that the

10    judgment will be entered today or tomorrow.  Wednesday at the

11    very latest.  The other thing you need to understand here is

12    that Mr. Stroba will have a continuing obligation to represent

13    you if you do decide to appeal.  And only at such time as the

14    Sixth Circuit Court of Appeals relieves him of that duty will

15    something else happen.

16          So he is your lawyer.  He will continue to be your

17    lawyer.  And I'm sure he will provide you with good counsel

18    going forward.

19          Is there anything further that I haven't covered or

20    have forgotten, Ms. Woods?

21          MS. WOODS:  No, Your Honor.  Thank you.

22          THE COURT:  Mr. Stroba.

23          MR. STROBA:  No, Your Honor.  Thank you.

24          THE COURT:  Thank you.  We are adjourned.

25          (Proceedings concluded, 11:55 a.m.)

REPORTER'S CERTIFICATE


     I, Kathy J. Anderson, CSR-2573, Official Court Reporter
for the United States District Court for the Western District
of Michigan, appointed pursuant to the provisions of Title 28,
United States Code, Section 753, do hereby certify that the
foregoing is a full, true and correct transcript of the
proceedings had in the within entitled and numbered cause on
the date hereinbefore set forth; and I do further certify that
the foregoing transcript has been prepared by me or under my
direction.



                         /s/ Kathy J. Anderson
                         Kathy J. Anderson, RPR, FCRR
                         U.S. District Court Reporter
                         412 Federal Building
                         Grand Rapids, Michigan  49503